Eva Lyde purchased two life insurance policies from United Insurance Company of America through its agent, Al Chaney. One policy was purchased in 1979 and insured the life of her husband, Johnny Lyde (Lyde policy). The other policy was purchased in 1983 and insured the life of her son, Glen Smith (Smith policy). Chaney personally collected the monthly premiums from Lyde. He gave her receipts or initialed her premium receipt book for each premium payment.
In May 1989 Lyde received correspondence from United, stating that the Lyde policy had lapsed for non-payment of premium as of September 22, 1988, and that it was returning a payment she had made for two months' premiums as being insufficient to reinstate the policy. It appears from the record that Chaney stopped properly accounting to the company for the Lyde policy premium payments after September 1988.
Lyde questioned Chaney regarding the May 1989 correspondence. Chaney told Lyde that the information in the letter was not correct and that United was mistaken. Chaney told Lyde that she should negotiate the refund check and give him another check covering those two months' premiums and an additional premium to get the policy reinstated. Lyde did so and continued to make the premium payments on both policies.
In March 1990 Lyde informed Chaney that she wished to obtain the cash surrender value from the Smith policy. Chaney informed her that he could find no record of the Smith policy with United. Lyde stopped making premium payments on both policies in March 1990.
In May 1991 Lyde's attorney sent United a letter, asking for the cash value of both the Lyde and the Smith policies. United informed Lyde that the Smith policy had been lapsed for non-payment as of February 1987 and that it had no cash value. The company sent further correspondence instructing her how to obtain the cash value of the Lyde policy and enclosing a cash surrender request for the Lyde policy.
In August 1991 Lyde filed a complaint against Chaney and United, alleging willful misrepresentation, reckless misrepresentation, mistaken misrepresentation, and deceit. She amended her complaint to add an additional count for breach of contract.
In August 1992 United moved for summary judgment on all four fraud counts. Following a hearing, the trial court entered a summary judgment in United's favor on all the fraud counts. The court subsequently amended its order to restore Lyde's claim for willful misrepresentation. *Page 667 
The case was tried to a jury in September 1992, only on the one count of willful misrepresentation related to the letter from United in 1989 and the breach of contract. At the close of Lyde's case-in-chief, United and Chaney moved for a directed verdict on all counts. Following a hearing on the matter, the court entered directed verdicts in United and Chaney's favor on the willful misrepresentation claim and the breach of contract claim with respect to the Lyde policy. The court directed a verdict in Lyde's favor on the breach of contract claim as to the Smith policy and awarded damages.
Prior to the entry of the directed verdict, Lyde attempted to amend her complaint to conform with the evidence. The effect of the amendment would have been to reinstate the counts of the original complaint previously removed by summary judgment. The court rejected the proffered amendment on the grounds that it would be prejudicial to United and Chaney. Lyde subsequently moved for judgment notwithstanding the verdict and for a new trial. The motions were denied. Lyde appeals.
Lyde presents two issues on appeal: (1) She contends that the court erred in granting the motion of United and Chaney for a directed verdict on the misrepresentation claim. (2) She further contends that the court erred in refusing to allow her to amend her complaint under Rule 15, A.R.Civ.P.
The trial court granted the directed verdict on the willful misrepresentation count because it determined that Lyde failed to prove the fraudulent "allegation" of her complaint. The court stated that the complaint alleged only one incident of willful misrepresentation and that incident dealt with Chaney's response to Lyde concerning the May 1989 letter from United. That allegation of fraud, as found in Lyde's complaint, is as follows:
 "5. Plaintiff alleges that shortly after receipt of that letter in May 1989, the Defendant, Al Chaney, came to Plaintiff's home located at 4610 Brunswick Drive, Eight Mile, Alabama, and represented to Plaintiff that the information contained in that letter was not accurate and that a mistake had been made by the insurance company. At that time, Defendant, Al Chaney, collected $112.56 from Plaintiff for two months of premiums on each of the two policies referred to above and advised Plaintiff to cash and keep the check for $73.96. Plaintiff continued making periodic payments to Defendant, Al Chaney, on the two policies through February 1990. In March 1990, Plaintiff wished to cash in her son's policy and receive the cash value and so advised Defendant, Al Chaney. At that point, the Defendant, Al Chaney, stopped coming to Plaintiff's home and collecting premiums on said policies. Plaintiff had other conversations with Defendant, Al Chaney, about cashing in her son's policy; and, in about April 1991, the Defendant, Al Chaney, informed Plaintiff that he would have to come up with some money on her husband's policy."
(Emphasis supplied.)
The trial court made known its interpretation of the complaint regarding the allegation of fraud in a September 17, 1992, motion hearing. The court informed the parties that it construed the complaint to plead only one claim of fraud, i.e., that Chaney came to Lyde's home and represented to her that the information contained in the May 1989 letter, regarding the Lyde policy, was inaccurate and that the insurance company had made a mistake. This hearing was held 11 days prior to trial.
On the morning of trial, United filed a motion in limine, asking the court to exclude any evidence concerning any alleged fraud concerning the Smith policy. During arguments on the motion the following colloquy transpired:
 "The Court: Now, looking at defendant, United Insurance Company's, supplemental motion. Kirk, which one do you want me to take up?
"Mr. Shaw: The supplemental first.
 "The Court: All right. Supplemental first. Okay. Number four, any evidence concerning any alleged fraud concerning the Glen Smith policy. Any evidence concerning any alleged fraud concerning the Glen Smith policy.
"Mr. Shaw: Yes, sir. *Page 668 
"The Court: What is that?
 "Mr. Shaw: There are two counts in this suit, one for fraud and it alleges fraud with respect to the Johnny Lyde policy.
 "The Court: Is that the one that Susan and Steele and I have had all the back and forth on?
 "Mr. Shaw: Yes, sir. Now, [this is] the second policy of insurance, the Glen Smith policy. We are saying that there should not be any evidence of fraud relating to it since there has been no allegation of fraud in the complaint related to it.
 "The Court: What about pattern and practice, don't they have to prove that?
 "Mr. Shaw: On the punitive damages aspect it would; yes sir.
 "The Court: I don't think I can grant that motion in limine. I don't think I can do that at this point."
At the close of Lyde's case-in-chief, when United and Chaney moved for their directed verdict on the fraud claim, the following exchange occurred:
 "The Court: All right. Now, we have got to analyze the fraud and see whether the proof matches the pleading. There is only one false statement alleged in here that I am able to see. And here is what it says. Mr. Chaney came to plaintiff's home and represented to plaintiff that the information contained in the letter was not accurate. And that a mistake had been made by the insurance company. Now, Dick, the problem that I have got is that Mrs. Lyde and Mr. Chaney both testified to the same thing. Both testified that he came to her house and told her that the policy was, in fact, lapsed and that they would have to put together some money to get it reinstated, all of which was true. In other words, the only statement proved on the topic was a true statement. So, it wasn't a false statement. So, it looks like this pleading hasn't been proved.
 "Mr. Pate: Your Honor, the paragraph goes on further on paragraph five and talks about other conversations.
 "The Court: I understand that. But I told Susan it wouldn't do her much good when we were talking about this some weeks ago. Fraud has to be specifically pleaded, pleaded with particularity. In other words, you have got to say what falsehoods you propose to prove.
 "Mr. Pate: Your Honor, if we could amend the complaint at this time, we would do so to conform with the evidence as presented. There was multiple, we think, misrepresentations and it is certainly a question of fact for the jury.
 "Mr. Shaw: Your Honor, we made our motion in limine to avoid any discussion of other representations. And as I recall, you said for pattern and practice purposes they would be allowed in.
 "The Court: I am afraid in a fraud case, Dick, and I really made this very clear to Susan when we talked some weeks ago, that inasmuch as you have to have specific pleadings that we really wouldn't be able to have a galloping complaint. In other words, a trial full of discussions about discussions and testimony about discussions and then at that point decide what the fraud to be pleaded was. I don't know that you can do that. I don't have any amendment in front of me. So, there is not much for me to rule on.
 "Mr. Pate: We would like to orally amend it or, if we can, we can write our amendment out and go ahead and submit it to the Court now."
Lyde's attorney drafted an "Amendment to Complaint" and alleged multiple willful misrepresentations of fact regarding the Lyde and Smith policies. Lyde proffered the amendment to the court. The court responded in the following manner:
 "The Court: I see. Okay. Now, Dick, I am going to put this amendment in the record so it will be preserved as a matter of record. But here is the thing the judge is up against in a fraud case. The judge can't very well tell anybody at the outset of the trial that there can't be any testimony on any statement except the particular statement that is pleaded. Because in a fraud case all the statements may tend to prove a particular false statement that's pleaded. So, the judge has to pretty well let things come on in. And, if the defending lawyers were to object and say, wait a *Page 669 
minute, judge, that's not pleaded. This particular statement is not pleaded. It shouldn't be allowed into evidence. The judge would have to overrule that because the statement would probably bear on the accuracy or inaccuracy of the statement that was pleaded about which the trial revolved. And, if after that process went on, the plaintiff could completely change horses and say, well, judge, we are not relying on the one we pleaded, but another one. Another false statement got in and we know that one was false. It really changes the entire lawsuit as far as the defendant goes."
Lyde's attorney then suggested that the original complaint did properly plead multiple allegations of fraud. The following discussion ensued:
 "The Court: You will have to point me — In other words, in any fraud action you have to plead the false statement. You have to say, here's the statement. This is the one that was false. My client relied to her detriment on it and proximately suffered damages. So, if there is some false statement that you all have pleaded with particularity, other than paragraph five, I need to look at it.
 "Mr. Pate: In paragraph three we state, at the time of purchase the plaintiff paid periodic premiums on both policies.
 "The Court: All right. That is not a false statement.
 "Mr. Pate: And we say that she received the May letter, the May '89 letter on —
"The Court: What paragraph are you reading?
 "Mr. Pate: This is paragraph four. The May '89 letter.
 "The Court: I have read the complaint. Just tell me the false statement. Just point me to the false statement.
 "Mr. Pate: Paragraph six says she received correspondence in '90 dated June 26 that indicated the policy had lapsed with no value.
"The Court: All right. Is that a false statement?
 "Mr. Pate: Well, then paragraph five says, plaintiff had a conversation with Al Chaney about cashing her son's policy in April '91. And then she says she had to come up with some money on that policy, which inferred that it had some cash value.
 "Mr. Holman: No, he said he would have to come up with the money on —
 "The Court: I don't believe you have pleaded a false statement in here, Dick. I just have to see — If you will point me to it, I am going to circle it with a pencil and I am going to ask myself the question, is this statement — was this statement made by the company and is it false? And then I will do the same thing with regard to Chaney. But I have just got to see what false statements you are relying on.
 "Mr. Pate: Yes, sir. You know, as I say, we filed this new amendment — I can draft, you know, with some time or make an oral amendment, if the court prefers, specifically alleging the false statements that we have litigated over the last year in this case.
 "The Court: The problem is, we would have to start the trial all over again and let the defendants put on another defense. And I would have to let them do discovery. I just don't know that you can completely change the allegation of fraud at the end of the trial.
 "Mr. Shaw: Your Honor, if I may come back to a point that you alluded to. When argument was made to you a couple of weeks or ten days ago about excluding the expert witness they intended to present, this point was made emphatically too by Your Honor, I am told by Steele, that that was what we were going to trial on, that representation.
 "The Court: That's a scientific fact. Susan — for the record, [Lyde's] co-counsel Susan Powers and I made a close examination of this complaint. Identified the only false statement alleged. We all discussed that that would be the only fraud issue in the trial. And I don't think it would be fair to allow an amendment at this point. So, amendment is not going to be allowed. The objection to the amendment is sustained. Which means that I have to grant all the motions for directed verdict except what I take it everybody agrees that the *Page 670 
plaintiff is entitled to a directed verdict on the Glen Smith policy for $357.12, plus costs. Is that right?"
Lyde insists that the trial court erred in interpreting her complaint to allege only one incidence of misrepresentation. She insists that the complaint properly pleaded multiple instances of misrepresentations regarding both the Lyde and Smith policies.
Rule 9(b), A.R.Civ.P., provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. Robinson v. AllstateIns. Co., 399 So.2d 288 (Ala. 1981). The purpose of Rule 9(b) is to provide adequate notice to the opposing party of any claim for fraud so that he may properly prepare his case. Caronv. Teagle, 345 So.2d 1331 (Ala. 1977).
The trial court did not abuse its discretion in its construction of the claim remaining after summary judgment. The claim, on its face, alleges fraud only with respect to the alleged misrepresentations concerning the May 1989 letter. The claim does not allege any particular misrepresentation concerning the Smith policy.
The record is clear that the trial court notified the parties 11 days prior to trial that it interpreted the complaint to state only one claim of fraud. The parties were again informed of the court's interpretation the day of trial when United and Chaney proffered their motion in limine to restrict any allegations of fraud concerning the Smith policy. It was evident from the ensuing discussion on that motion that the trial court would only entertain evidence concerning alleged misrepresentations relating to the Smith policy for the limited purpose of proving "pattern and practice." Lyde had ample notice of the court's construction. She, however, did nothing to remedy the self-induced obstacle. Instead, she proceeded to trial as if the alleged misrepresentations concerning the Smith policy were also at issue. United and Chaney proceeded to trial prepared only to defend against the one allegation of fraud as found by the trial court. It was not until after she presented her evidence that she questioned the court's interpretation of her complaint. Lyde's questioning came much too late.
Lyde insists that even if she failed to adequately plead the other fraudulent claims, the trial court nevertheless erred when it refused to grant her Rule 15(b), A.R.Civ.P., motion to amend.
Rule 15(b) provides, in pertinent part, the following:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. . . . The court is to be liberal in granting permission to amend when justice so requires."
The determination of whether an issue has been tried by the express or implied consent of the parties is a matter which lies within the discretionary power of the trial court.McCollum v. Reeves, 521 So.2d 13 (Ala. 1987). Whether pleadings are deemed to be amended in order to conform to the evidence presented is also a matter within the discretion of the trial court. McCollum. These determinations made by a trial court will not be altered on appeal absent an abuse of discretion.McCollum.
The trial court determined that to allow the amendment would be prejudicial to United and Chaney. We agree.
United and Chaney proceeded to trial prepared only to defend against the allegation of fraud concerning the Lyde policy and the May 1989 letter. They filed their motion in limine to restrict the entertainment of evidence concerning alleged misrepresentations regarding the Smith policy. The trial court made it abundantly clear that it would entertain *Page 671 
the evidence of fraud proffered on the Smith policy only for the purpose of proving "pattern and practice."
United and Chaney had no notice, either before or during trial, that they would be defending any allegation of fraud other than the one concerning the Lyde policy and the May 1989 letter. The record affirmatively shows that they did not consent, expressly or impliedly, to a trial involving multiple misrepresentations. United and Chaney would have been prejudiced by a Rule 15(b) amendment. The trial court did not abuse its discretion in refusing to grant the amendment. We have included in our opinion perhaps excessive material in order to make evident the reasoning and understanding of the trial judge. It must be kept in mind that there is no appeal from the entry of the summary judgment prior to trial.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.