MOORE, Judge.
 

 Conelious Jarrett appeals from the Houston Circuit Court’s February 7, 2008, summary judgment in favor of the Alabama Department of Industrial Relations and the Dothan Country Club on Jarrett’s claim for unemployment-compensation benefits. We reverse and remand.
 

 Facts and Procedural
 
 History
 
 [1]
 

 Dothan Country Club (“DCC”) employed Jarrett as a waiter. On April 10, 2007, Jarrett tendered a letter of resignation, indicating that his last date of employment would be May 31, 2007. Jackie Culpepper, the human-relations director at DCC, testified by affidavit that she began seeking a replacement for Jarrett’s position after he turned in his letter of resignation, that she hired a part-time employee on May 11, 2007, and that she later hired another part-time employee to assume Jarrett’s duties.
 

 Culpepper attested that, shortly before Jarrett’s scheduled termination date, Jarrett indicated to Culpepper that he desired to revoke his letter of resignation. According to Jarrett, in late April or early May, he spoke with Culpepper about continuing to work at DCC. Jarrett stated that, at first, Culpepper had told him that some people had been hired to replace him but that, subsequently, Culpepper had instructed Jarrett to speak with Paul Neal, DCC’s dining-room manager and Jarrett’s supervisor. According to Jarrett, Neal told him that DCC had hired other people to replace him but that the new employees either had not shown up or otherwise had not worked out and that Jarrett could continue working at DCC. Jarrett attested that he had then spoken with Culpepper, who, he stated, had told him that it was alright with her for Jarrett to continue working at DCC. Jarrett stated that he had continued working at DCC, that both Culpepper and Neal had led him to believe that he would continue to be employed there, and that he had obtained a vacation-request form from Culpepper because he intended to request some time off in August. Jarrett stated that he had been put on the schedule for the weekend after May 31, 2007, but that, when he went to pick up
 
 *503
 
 his paycheck on June 1, 2007, a Friday, he was told that he had been “let go.”
 

 Neal stated in his affidavit, filed after Jarrett’s affidavit, that he had not told Jarrett that he could continue working at DCC; he also stated that other employees had been hired to fill Jarrett’s position.
 

 After being “let go,” Jarrett filed a claim for unemployment-compensation benefits, which an administrative hearing officer denied. On October 4, 2007, Jarrett filed a notice of appeal to the Houston Circuit Court. The Alabama Department of Industrial Relations and DCC (hereinafter collectively referred to as “ADIR”) filed an answer to Jarrett’s notice of appeal on October 22, 2007. On November 6, 2007, ADIR filed a motion to dismiss or, in the alternative, motion for a summary judgment, to which Jarrett responded on January 4, 2008. On February 7, 2008, ADIR filed a second motion to dismiss or, in the alternative, motion for a summary judgment. On that same day, the trial court entered an order granting ADIR’s motion for a summary judgment. Jarrett filed a postjudgment motion on February 15, 2008; the trial court denied that motion on February 21, 2008. Jarrett timely filed his notice of appeal to this court on March 28, 2008.
 

 Standard of Review
 

 In
 
 General Motors Corp. v. Kilgore,
 
 853 So.2d 171, 173 (Ala.2002), our supreme court outlined the appropriate standard of review of a summary judgment:
 

 “ ‘We review this case
 
 de novo,
 
 applying the oft-stated principles governing appellate review of a trial court’s grant or denial of a summary judgment motion:
 

 “ ‘ “We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material facts exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.” ’
 

 “American Liberty Ins. Co. v. AmSouth Bank,
 
 825 So.2d 786, 790 (Ala.2002) (quoting
 
 Nationwide Prop. & Gas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala.2000) (citations omitted)).”
 

 Analysis
 

 In its motions for a summary judgment, ADIR argued that Jarrett was not entitled to unemployment-compensation benefits because, it asserted, Jarrett had voluntarily resigned from his employment at DCC. Alabama Code 1975, § 25^-78, states, in pertinent part:
 

 “An individual shall be disqualified for total or partial unemployment:'
 

 [[Image here]]
 

 “(2) Voluntarily Quitting Work. If he has left his most recent bona fide work voluntarily without good cause connected with such work.”
 

 ADIR relies on Jarrett’s admission in his affidavit that he had submitted a letter of resignation, and it argues that DCC accepted, relied on, and acted on that resignation. It is undisputed that Jarrett sub
 
 *504
 
 mitted a letter of resignation on April 10, 2007. The question remains, however, whether Jarrett effectively rescinded that resignation.
 

 We can find no cases in Alabama that have addressed the issue whether an employee’s withdrawal of his or her previously submitted resignation, without more, removes him or her from being disqualified from receiving unemployment-compensation benefits under § 25-4-78(2). In
 
 Cunliffe v. Industrial Claim Appeals Office of State of Colorado,
 
 51 P.3d 1088 (Colo.Ct. App.2002), cited by Jarrett, the Colorado Court of Appeals discussed approaches by different jurisdictions to the question “whether an employer’s refusal to accept an employee’s retraction of a voluntarily submitted resignation transforms that resignation into an involuntary termination”:
 

 “A minority view is that an employer’s refusal to accept the withdrawal of the resignation renders the subsequent termination involuntary and thus entitles the employee to benefits.
 
 See, e.g., Mauro v. Administrator,
 
 19 Conn.Supp. 362, 113 A.2d 866 (1954);
 
 Cotright v. Doyal,
 
 195 So.2d 176 (La.Ct.App.1967).
 

 “In Pennsylvania, a resignation remains a voluntary termination if the employer has taken steps to replace the claimant before the claimant’s revocation attempts.
 
 See Zimmerman v. Commonwealth,
 
 101 Pa. Commw. 274, 516 A.2d 102 (1986).
 

 “However, the majority of jurisdictions have held that an employer may not be required to accept the withdrawal of the resignation. Thus, a claimant may be denied benefits on the basis of a voluntary termination, notwithstanding an employer’s refusal to accept a retraction of the voluntary resignation.
 
 See Osterhout v. Everett,
 
 6 Ark.App. 216, 639 S.W.2d 539 (1982);
 
 Wright v. District of Columbia Dep’t of Employment Services,
 
 560 A.2d 509 (D.C.1989);
 
 Langley v. Employment Appeal Bd.,
 
 490 N.W.2d 300 (Iowa Ct.App.1992);
 
 Guy Gannett Publ’g Co. v. Maine Employment Sec. Comm’n,
 
 317 A.2d 183 (Me.1974).”
 

 51 P.3d at 1089.
 

 Jarrett requests that this court adopt the reasoning in a Louisiana case,
 
 Cotright v. Doyal,
 
 195 So.2d 176 (La.Ct.App.1967), in which Cotright had given her employer notice that she was leaving her employment at a future date but then later advised her employer that she was not leaving, at which time Cotright was informed that her employer had already hired a replacement. 195 So.2d at 177. The applicable Louisiana statute at issue in
 
 Cot-right,
 
 La.Rev.Stat. Ann. § 23:1601, like § 25-4-78(2), disqualified an individual from unemployment-compensation benefits when he or she had left his or her employment without good cause connected with his or her employment.
 
 Id.
 
 In determining that Cotright was entitled to unemployment-compensation benefits, the court stated:
 

 “It is not open to question that had claimant not retracted her resignation, she would not be eligible for compensation. By retracting her notice of leaving, however, and remaining available and desiring to continue her employment we opine that her status was as one who did not voluntarily become unemployed, or stated somewhat differently, she never left her job until so directed by her employer.”
 

 195 So.2d at 178-79 (citations omitted).
 

 At this juncture, we need not decide whether to adopt the analysis in
 
 Cotright
 
 and
 
 Cunlijfe,
 
 however. Based on the
 
 *505
 
 competing affidavits,
 
 [2]
 
 a material factual dispute exists regarding whether DCC accepted Jarrett’s attempt to rescind his resignation. If it did, then Jarrett did not voluntarily leave his employment on June 1, 2007, and § 25-4-78(2) would not disqualify him from receiving unemployment-compensation benefits. If it did not, then, and only then, would the court have to consider the effect of DCC’s refusal to accept Jarrett’s withdrawal of his resignation on his unemployment-compensation claim. We therefore reverse the judgment of the trial court and remand the cause for resolution of that issue.
 

 Jarrett also asserts on appeal that the trial court erred in failing to order ADIR to prepare a transcript of the administrative proceedings regarding his unemployment-compensation claim. Jarrett asserts that the transcript contains testimony from Culpepper that would be helpful to his ease.
 

 Section 25-4-95, Ala.Code 1975, states, in pertinent part:
 

 “The director [of the Department of Industrial Relations] shall cause to be certified and filed in the said court all documents and papers introduced in evidence before the Board of Appeals or appeals tribunal, together with the findings of fact and the decision of the Board of Appeals or the appeals tribunal, as the case may be. No circuit court shall permit an appeal from a decision allowing or disallowing a claim for benefits unless the decision sought to be reviewed is that of an appeals tribunal or of the board of appeals and unless the person filing such appeal has exhausted his administrative remedies as provided by this chapter.”
 

 ADIR argues that, “[w]hile it is clear that the record must be certified to the court prior to the trial of the case, there is no specific requirement that the record be certified prior to any preliminary hearings such as the one here involving summary judgment.” ADIR further argues that Jarrett has not shown that he has been prejudiced by the record not having been certified. Finally, ADIR cites
 
 State Department of Industrial Relations v. Page,
 
 362 So.2d 268 (Ala.Civ.App.1978), for the proposition that “the reason for having the record certified is to provide proof to the court that the claimant/employer has exhausted them administrative remedies.”
 

 This court, in
 
 Page,
 
 did observe that § 25-4-95 requires the record to be certified to establish that the administrative process had been completed. 362 So.2d at 265. However, the court also stated that material from the administrative record could be used by the trial court to assist it in establishing the issues to be decided by the trial court.
 
 Id.
 
 at 265-66. In
 
 Page,
 
 the materials from the administrative record that were objected to had not been admitted into evidence and, therefore, could not have been considered by the trial court.
 
 Id.
 
 at 266. The materials had, however, been certified to the trial court in
 
 *506
 
 accordance with § 25-4-95.
 
 Id.
 
 at 266. Without deciding whether the trial court’s failure to order ADIR to certify the entire administrative record to the trial court prejudiced Jarrett, we instruct the trial court, on remand, to take appropriate actions to ensure that ADIR complies with § 25-4-95.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . The facts are taken from the affidavits and exhibits attached to the summary-judgment motions and the opposition to those motions.
 

 [2]
 

 . ADIR asserts that, at the summary-judgment hearing, the trial court requested that both parties file additional affidavits and that Jarrett failed to provide the same. ADIR argues further that, because Jarrett failed to file additional affidavits, he failed to controvert the evidence presented in Neal’s affidavit indicating that Neal had not told Jarrett that he could return to work at DCC after the date of his intended resignation. However, in opposition to ADIR’s initial motion, Jarrett had submitted his affidavit in which he stated that Neal had accepted his request to rescind his resignation. That affidavit sufficiently contradicted Neal’s later affidavit testimony so that no additional affidavit testimony was necessary to create a genuine issue of material fact on that issue.
 
 See
 
 Ala. R. Civ. P., Rule 56(e) (“the adverse party’s response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial”).