BRYAN, Judge.
Bonnie Fay Malone, the plaintiff below, appeals from a summary judgment in favor of the defendant below, Jackie Bailey Noblitt. We affirm.

Facts

On January 23, 2008, at approximately 4:45 a.m., Noblitt was driving his automobile west on U.S. Highway 72 (“Highway 72”), a four-lane highway with two westbound lanes and two eastbound lanes separated by a median, when his automobile crossed the median into the eastbound lanes and struck an automobile occupied by Malone. Mvin Ray Poe, a witness who was driving west on Highway 72 approximately one-eighth of a mile behind Noblitt, testified in his deposition that he first observed Noblitt’s automobile well off the shoulder of the westbound lanes near a fence and that
“[Suddenly [Noblitt’s automobile] veered across both westbound lanes into the median and was jumping around in the median. Then [Noblitt] came back across the westbound lanes and he dropped down to a low place. He went out of sight.
“Then I saw him going up the hill on the other side. He suddenly veered back across both lanes, across the median, across the eastbound lanes into the shoulder, back out into the eastbound lanes and proceeded west in the eastbound lanes. By that time I had gotten up a little closer. I was still in the westbound lane. He was in the eastbound lane.
“I didn’t actually see. I knew there was some involvement with a vehicle, I think he sideswiped it. Then I saw vehicles leaving the light at County Line Road and they hit head-on. I think they were both in the inside lane.”
*406 Poe further testified that he stopped, telephoned emergency 911 to report the accident, and went to check on the people involved in the collision. Poe testified that when he first got to the scene of the collision, he stopped to check on a woman who was complaining of pain, while another man went to check on Noblitt. The other man told Poe that he could not communicate with Noblitt, who “was just sitting there” in his automobile. After an ambulance arrived, Poe went over to Nob-litt’s automobile and Noblitt “was still sitting there and wasn’t saying anything.” Poe then left Noblitt’s automobile and rejoined the man who had first checked on Noblitt. Thereafter, a deputy arrived, and Poe and the deputy checked on Noblitt. Noblitt “still wasn’t saying anything.” Poe testified that, based on the erratic way that Noblitt had been driving immediately before the collision, he assumed that Nob-litt was intoxicated; however, Poe testified that “[njeither the deputy [n]or [Poe] could smell alcohol on him or the vehicle.” Poe further testified:
“The deputy had a flashlight. We both looked in the vehicle. We looked in the back. It looked like egg cartons or something back there as I recall. There were no bottles, no cans or anything in the floorboard that we saw at that time. His window was either down or the door was open, I can’t recall for sure, but we couldn’t smell any odors from the vehicle.”
Noblitt testified in his deposition that he had no memory of the collision. He testified that, the night before the accident, he had visited his wife, who was a patient in a hospital, and then had gone to bed at approximately 8:30 p.m. On the morning of the accident, he got up at 4:00 a.m.; took a shower; shaved; took his prescription medicine, which consisted of a prescription medication for high blood pressure and a prescription medication for high cholesterol; and left his house at 4:30 a.m. to go to his business, Monrovia Market and Deli. On the way, he called his stepson on his cellular telephone, had a conversation with him, and ended the call when he was passing Madison Square Mall on Highway 72 several miles before he reached Jeff Road, the road where he turns off of Highway 72 to go to his business. Noblitt testified that he does not remember anything from the time he ended his call with his stepson until he woke up in the hospital after the collision. The collision occurred approximately three miles after Noblitt had passed Jeff Road; Noblitt testified that he did not know why he passed Jeff Road instead of turning onto it.
Noblitt testified that he had not drunk any alcohol since 1971 and that he had never had an adverse reaction to his prescription medication.
Dr. Amrit Arora, a board-certified neurologist who examined Noblitt in the intensive-care unit of Huntsville Hospital on the day of the collision and subsequently treated Noblitt, testified in his deposition as follows:
“Q. All right. What history or understanding did you have regarding the reason for Mr. Noblitt being in the hospital and for you being requested to consult with him?
“A. He was — he had been in a motor vehicle accident with an unexplained period where he was driving for a few miles, and due to the unexplained period in absence of time, they called me in to evaluate for any potential neurologic cause.
“Q. Was it your understanding that Mr. Noblitt had gone for some period of time without any recall or recollection of the events surrounding the accident?
“A. Yes.
*407 “Q. And that this had occurred for some length of time prior to the time of the accident?
“A. That’s correct
“Q. ... Did you conduct an examination of Mr. Noblitt?
“A. I did.
“Q. All right. As a result — well, first of all, with regard to the history that you received, did you have any indication whatsoever that Mr. Noblitt was intoxicated at the time of this accident?
“A. No.
“Q. All right. Did you have any indication that he was under the influence of any drugs at the time of this accident that would explain his condition?
“A. No.
“Q. All right. As a result of your examination, did you form a diagnosis or opinion as to what may have caused the episode that he described to you?
“A. We did.
“Q. Okay. And what was that opinion?
“A. The most likely diagnosis was complex partial seizure.
“Q. Would you please explain to the ladies and gentlemen of the jury what a complex partial seizure is?
“A. A seizure is an electrical short circuit in the brain. A partial seizure is one that involves part of the brain that can sometimes cause loss of time and awareness.
“Q.. All right. Assuming that your diagnosis or opinion was, in fact, what occurred, would Mr. Noblitt have had any advanced warning that he might be about to suffer such a seizure?
“A. No, he would not.
“Q. Assuming that Mr. Noblitt lapsed into some level of unconsciousness at that time, could he have done that and there have been no warning of any symptoms, and could he have done that •without knowledge that that condition was about to occur?
“A. Yes.
“Q. Okay. What type of treatment did you render to Mr. Noblitt at that time?
“A. We started him on an anti-seizure medication called Keppra.
“Q. Have you continued to see Mr. Noblitt since that date?
“A. Yes, I have.
“Q. Are you still continuing to treat him for a suspected seizure condition?
“A. Yes, I am.
“Q. And is he still on medication for that purpose?
“A. He is.
“Q. Had you ever seen Mr. Noblitt pri- or to January the 23rd of 2008?
“A. No, I have not — no, I did not.
“Q. Do you have any history whatsoever or any indication whatsoever that Mr. Noblitt had ever suffered a condition or event of this type prior to January the 23rd of 2008?
“A. No."-

Procedural History

On February 28, 2008, Malone sued Noblitt, stating claims of negligence and wantonness. Answering, Noblitt denied that he was guilty of negligence or wantonness and, as an affirmative defense, asserted that he was not negligent or wanton because, he said, he had suddenly lost consciousness before the collision, he had not done anything to cause his loss of consciousness, and he could not have foreseen that he would lose consciousness. See Walker v. Cardwell, 348 So.2d 1049 (Ala.1977) (recognizing that an involuntary and unforeseeable loss of consciousness constituted an affirmative defense to negligence and wantonness claims based on an *408 automobile accident). On September 11, 2009, Noblitt moved for a summary judgment based on that affirmative defense. He supported his summary-judgment motion with his deposition, Poe’s deposition, and Dr. Arora’s deposition.
Also on September 11, the trial court entered an order directing Malone to respond to Noblitt’s summary-judgment motion within 21 days. Malone neither moved to strike any of the evidence Nob-litt had submitted in support of his summary-judgment motion, nor submitted any evidence in opposition to Noblitt’s summary-judgment motion, nor responded in any other way to Noblitt’s summary-judgment motion. On October 6, 2009, the trial court entered an order granting Nob-litt’s summary-judgment motion.
On October 16, 2009, Malone, having employed new counsel, moved the trial court to vacate the summary judgment in favor of Noblitt on the ground that her former counsel’s failure to file anything in response to Noblitt’s summary-judgment motion constituted an extraordinary circumstance that justified the vacating of the order granting Noblitt’s summary-judgment motion. In support of her motion, Malone submitted an affidavit in which she attested that she had kept in close contact with her prior counsel concerning the status of her action, that her prior counsel had informed her that he would be responding to Noblitt’s summary-judgment motion, and that she had not learned that her former counsel had not responded to Noblitt’s summary-judgment motion until after the trial court had entered its order granting Noblitt’s summary-judgment motion.
Noblitt replied to Malone’s motion to vacate the summary judgment on October 28, 2009. Noblitt asserted that Malone’s former counsel had not responded to Nob-litt’s summary-judgment motion because he recognized that the summary-judgment motion was due to be granted and that, therefore, his failure to respond did not constitute an extraordinary circumstance that justified vacating the summary judgment. Noblitt also asserted that the trial court should deny Malone’s motion to vacate the summary judgment because, he said, Malone had not submitted any evidence with that motion establishing the existence of a genuine issue of material fact.
On November 20, 2009, the trial court held a hearing with respect to Malone’s motion to vacate the summary judgment. Following the hearing, Malone moved the trial court to supplement the record to include documents that Malone’s counsel had referred to during the hearing regarding Malone’s motion to vacate the summary judgment. The documents included Noblitt’s answers to Malone’s interrogatories, which included the following interrogatory and answer:
“22. Had you taken any prescriptive or non-prescriptive drugs within twenty-four (24) hours of the subject collision? If so, please identify the drug, the date and time taken and the amount taken. “ANSWER: Lipitor and Accupril. I do not know if I took an Ambien or not.”
On November 30, 2009, the trial court entered an order denying Malone’s motion on the ground that Malone had neither directed the trial court to any evidence that was in the record before the entry of the summary judgment that established the existence of a genuine issue of material fact nor submitted any new evidence establishing the existence of a genuine issue of material fact.
Malone appealed to the supreme court on December 21, 2009, and the supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
*409 Malone first argues that the trial court erred in granting Noblitt’s summary-judgment motion because, she says, the evidence submitted by Noblitt did not negate the existence of genuine issues of material fact regarding whether Noblitt was under the influence of alcohol or drugs at the time of the accident because, Malone says, Noblitt did not submit any results of laboratory tests at the hospital indicating that he did not have alcohol in his blood when the accident occurred; Noblitt stated in his responses to interrogatories that he did not know whether he had taken Ambien, a medication intended to induce sleep, within 24 hours of the accident; and Dr. Arora’s opinion that a complex partial seizure was “the most likely diagnosis” of Noblitt’s condition when the accident occurred was speculative.
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-58 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035,1038 (Ala.2004).
“A trial court decides a motion for summary judgment upon a consideration of whatever materials are submitted in support of or in opposition to the motion. The trial court cannot consider any facts not of judicial notice except those facts evidenced by materials contained in the trial court record upon submission of the motion for summary judgment. Likewise, the trial court cannot be reversed on any ground or argument not presented for or against the motion.
“An appellate court can consider a fact to support or to undermine a summary judgment only to the extent that the record on appeal contains materials from the record before the trial court evidencing that fact at the time of submission of the motion for summary judgment. Likewise, the appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.”
Ex parte Ryals, 773 So.2d 1011, 1013 (Ala. 2000) (citations and original emphasis omitted; emphasis added).
We cannot consider any of Malone’s arguments challenging the summary judgment because they were not presented to the trial court before or at the time of submission of the summary-judgment motion. See Ex parte Ryals, 773 So.2d at *410 1013 (“[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.” (citation and original emphasis omitted; emphasis added)).
Moreover, even if we could consider them, they have no merit. Noblitt’s testimony that he had no recollection of anything between the time he terminated his call with his stepson several miles before the accident occurred and the time he woke up in the hospital; his testimony denying that he had consumed alcohol since 1971; his testimony that the only drugs he had taken the day of the accident were prescription medications for high blood pressure and high cholesterol and that he had never had any adverse reactions to those drugs; Poe’s testimony that, after the accident, he did not detect any indication that Noblitt had consumed alcohol; Dr. Arora’s testimony that, after the accident, he did not detect any indication that Noblitt was under the influence of alcohol or drugs; and Noblitt’s testimony that he had never suffered a similar loss of consciousness or awareness before he suffered such a loss immediately before the accident, and the absence of any evidence indicating that Noblitt suffered a head injury in the accident that would have caused amnesia, constituted substantial evidence tending to prove that Noblitt suffered an involuntary and unforeseeable loss of consciousness or awareness immediately before the accident, see West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989) (“[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”), which shifted the burden to Malone to produce substantial evidence establishing the existence of a genuine issue of material fact with respect to whether Noblitt suffered an involuntary and unforeseeable loss of consciousness or awareness. See Dow v. Alabama Democratic Party, 897 So.2d at 1038 (“Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.”). Thus, Noblitt made a prima facie showing of his affirmative defense without submitting the results of laboratory tests indicating that he did not have alcohol in his blood and without relying on Dr. Aro-ra’s opinion that a complex partial seizure was the most likely cause of his loss of consciousness or awareness. The only evidence Malone submitted that she assei’ts met her burden of production is Noblitt’s interrogatory answer to the effect that he did not know whether he had taken an Ambien within 24 hours of the accident, which Malone submitted after the summary-judgment motion had already been granted. Even if that evidence had been timely submitted before or at the time the trial court took the summary-judgment motion under submission, it would not have established a genuine issue of material fact with respect to whether Noblitt was under the influence of drugs when the accident occurred because it did not tend to prove that it was more probable that Noblitt took an Ambien than it was that he did not take an Ambien within 24 hours of the accident and, therefore, it did not constitute substantial evidence indicating that Noblitt had taken an Ambien within 24 hours of the accident. See West v. Founders Life Assurance Co. of Florida, 547 So.2d at 871 (“[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of im *411 partial judgment can reasonably infer the existence of the fact sought to be proved.”).
Malone also argues that the trial court erred in denying her motion to vacate the summary judgment because, she says, her first counsel failed to attend Dr. Arora’s deposition and failed to respond to the summary-judgment motion, which constituted extraordinary circumstances justifying the vacating of the summary judgment. First, we cannot consider Malone’s argument insofar as it is based on her former counsel’s alleged failure to attend Dr. Arora’s deposition because the record does not establish that she presented that argument to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). We find no merit in Malone’s argument insofar as it is based on her former counsel’s failure to respond to the summary-judgment motion because Malone made no showing that she could have established the existence of a genuine issue of material fact if her former attorney had responded to the summary-judgment motion.
For the reasons discussed above, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.