On Application for Rehearing

PITTMAN, Judge.
This court’s opinion of October 25, 2013, is withdrawn, and the following is substituted therefor.
Deidra Smith appeals from a summary judgment entered in favor of Cotton States Mutual Insurance Company (“Cotton States”) by the Cullman Circuit Court on Deidra’s claims alleging breach of contract, bad faith, misrepresentation, unfair and deceptive trade practices, and conversion. We affirm in part and reverse in part.

Procedural History

Deidra filed a complaint against Cotton States and a number of fictitiously named defendants, asserting claims of breach of contract, bad faith, misrepresentation, unfair and deceptive trade practices, and conversion, based on Cotton States’ alleged failure to pay Deidra insurance benefits for damage to her dwelling and personal property caused by a fire.[1] Cotton States filed an answer to Deidra’s complaint. Cotton States subsequently filed a motion for a summary judgment, and, on the same date the motion was filed, the trial court entered an order directing Deidra to respond to the summary-judgment motion, stating that, if no proper response was filed within 30 days, a judgment might be entered in favor of Cotton States. Deidra filed a response to Cotton States’ motion for a summary judgment;[2] that response did not include any exhibits or citation to authority. Cotton States filed a reply to Deidra’s response. Following a hearing, the trial court entered a judgment granting Cotton States’ summary-judgment motion. Deidra filed a postjudgment motion, which the trial court denied. Deidra timely appealed to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).

Facts

Cotton States submitted a transcript of Deidra’s deposition testimony. Deidra testified that she lives in Vinemont with her husband, Anthony Smith, and her two children in a two-story house that also has a basement. According to Deidra, she initially had insurance on the house with “Farm Bureau,” but she had later received a letter in the mail indicating that her coverage was being “switched over” to Cotton States. She testified that she was sure she had received an insurance policy from Cotton States, but, she said, she did not remember sitting down and reading it. Deidra testified that, on June 27, 2009, she and her family had left the house and that, when they returned, they walked in and discovered that the house was pitch black from soot. She stated that a fire had originated in the basement but that it had burned out by the time she and her family had arrived back at the house.
Deidra testified that the first time Travis Hill, the insurance adjuster for Cotton States, had come to the house, he had looked at the basement and talked about *144 what was going to have to be done to repair the damage caused by the fire, including gutting the basement. She stated that Hill had told her and her husband to make notes of everything they had in the house. She testified that her understanding of what Hill had told them was that either they could get somebody to do the work to repair and clean the house or the insurance company “would get somebody to get estimates and stuff that need[ed] to be done.” She stated that Chris Cooper had later taken over handling their claim from Hill. Deidra testified that a business named PuroClean had done most of the cleaning in the house. She stated that the basement had been burned and that the main level of the house had been covered with soot. According to Deidra, the carpet in the basement was pulled up and replaced after the fire.
Deidra testified that, while the repairs were being performed, the family had lived in a rental house for close to a year, and she thought that Cotton States had reimbursed them for the rental payments. She testified that a business named Monk’s Carpet had replaced the hardwood floors and the carpet in the house, as well as the tile in the kitchen, that she was satisfied with the work that Monk’s Carpet had done, and that Cotton States had paid for that work. She testified that the doors and cabinets in the main part of the house had been sanded and refinished, that she was satisfied with that work, and that Cotton States had paid for that work as well. According to Deidra, the tile in the basement and the main part of the house had been stained by the fire. She testified that PuroClean had attempted to clean that tile but that the grout between the tiles was not holding and was turning white and that the tiles had cracked because of the cleaner used by PuroClean. Deidra testified further that the porches of the house had black soot residue on them from her and her family and the cleaning crew walking on them, that PuroClean had undertaken to clean the porches by pressure washing them, but that, as a result of the pressure washing, the “treatment” had been removed from the wood, causing it to crack. Deidra also stated that the coun-tertops in the kitchen had been damaged but had not been replaced because, she said, Cooper had told her that the damage to the countertops had not been caused by the fire.
Deidra testified that some of the contents of the house had been destroyed by the fire and that Cotton States had paid to replace some of those contents. She stated that she had not received the depreciation value on some of the items, that seasonal items had not been replaced, and that other items had not been replaced because she could not afford to replace them without first receiving the replacement-cost amount, rather than that amount minus depreciation, for those items from Cotton States. She testified that she and her husband had made an itemized list of the items damaged by the fire, that Cotton States had gone through the list, and that Cotton States had come up with an amount, less depreciation, depending on the age of the item, that Cotton States had paid them for each item. Shé stated that she and her husband had replaced some of the items themselves and had taken the receipts for those items to Cooper. She stated that them clothes had not been properly cleaned by PuroClean but that Cotton States had paid for the cleaning. She testified that she had been told that Cotton States would not replace their clothes.
Cotton States also submitted a transcript of Anthony’s deposition testimony. Anthony testified that, when the family had arrived back at the house on the day of the fire, he had opened the back door of *145 the house and found that everything was pitch black and that the lights would not come on. He testified that Hill had contacted him and had met him at the house two days after the fire and that they “went over some things.” Anthony stated that Hill had told him and Deidra to make a list of everything in the house, whether it had been damaged or not. He testified that the county investigators had determined that a cordless telephone in the basement had started the fire. According to Anthony, Hill had told them that everything in the basement needed to be replaced; Hill had also recommended that they use Puro-Clean to clean the house, although, according to Anthony, Hill had told them that they could use whoever they wanted. Anthony testified that Hill had told him that it was up to the Smiths to make sure the job was done right if they elected to use a cleaner of their own choosing or that, if they used PuroClean, Cotton States would deal with the company directly and make sure the company did what it was supposed to do. Anthony stated that Hill had contacted PuroClean and that PuroClean had come out to the house within a couple of days after the fire. Anthony testified that he had signed an agreement with PuroClean. He also testified that he and Deidra had endorsed the first check they received from Cotton States to PuroClean but that they had not endorsed the second one they received. Anthony testified that CRDN was the company they had used to clean their clothes and that he had signed a document when the clothes had been brought back because, he said, he had spoken to a supervisor, who had told him that his signature meant only that he had received the clothes and that, if he was not satisfied with the cleaning of the clothes, he would not owe CRDN anything.
According to Anthony, Cooper, who had replaced Hill, had refused to replace the tile floors in the basement or anywhere other than in the kitchen. Anthony stated that the grout was stained and the tiles were grey, although they were beige before the fire. He testified that Cooper had told them that the tiles looked good as they were and that he refused to replace them. Anthony testified that Cotton States had had the hardwood floors on the main level of the house and the tile floors in the kitchen replaced. According to Anthony, the tile in the bathrooms and the basement should have been replaced as well.
Anthony testified that the countertops in the house had warped and buckled due to the heat of the fire and had needed to be replaced. He testified that two of the toilets had cracked and that all the toilets were stained. Anthony stated that Dave Cowan, the owner of PuroClean, had sent his nephew to the house with a pressure washer to clean the porches and that the pressure washing had caused the wood to splinter.
According to Anthony, Cotton States had the tile and the grout in the kitchen replaced. He testified that Rick Monk, of Monk’s Carpet, the company that had replaced the tile, stated that, due to the cleaner PuroClean had used to clean the tile, a greasy film had been left on the grout and that the grout could not be stained because the stain would not hold due to the film left by the cleaner. Anthony stated that the cabinets in the house are stained black from soot. He testified that PuroClean had attempted to clean the insulation in the basement but that the attempt had failed, so he had paid to have the insulation, along with a pegboard, replaced for approximately $700 or $800. He testified that he had replaced the coun-tertops with granite, rather than Formica, like the old countertops, because, he said, the price of the granite countertops had *146 been only approximately $200 more than the price of the Formica countertops.
Anthony admitted that he had received a letter from Cooper stating that Cotton States did not guarantee the workmanship of the contractors or the vendors. He testified, however, that he had relied on Hill’s assertion that, if they used who Cotton States suggested, Cotton States would ' make sure the job was done right.
He testified that PuroClean had hired CRDN and that CRDN had not brought - back certain items that they had taken to clean, including shoes. He testified that the refrigerator had been damaged by the fire and that he had purchased a new refrigerator. With regard to the family’s clothes, he testified that Dave Cowan from PuroClean and Cooper had smelled the clothes after they had been returned by CRDN and that they had noted that the smell of smoke was still strong. He stated that CRDN had first returned the clothes six or seven months after the fire but then had picked up the clothes again to reclean them and that it was another three or four months before they were returned. He testified that CRDN had picked up the clothes the second time only after Cowan had taken certain articles back to CRDN to prove that they were not clean. Anthony testified that the Smiths never received their shoes back and that they had not been reimbursed for boots that he had purchased, although he had submitted receipts for the boots to Cooper.
Cotton States submitted a letter dated July 30, 2009, from Cooper to Deidra, which stated that Cotton States “does not guarantee the workmanship of any contractors or vendors.”

Analysis

Deidra argues on appeal that the trial court erred in entering a summary judgment in favor of Cotton States.
“In General Motors Corp. v. Kilgore, 858 So.2d 171, 173 (Ala.2002), our supreme court outlined the appropriate standard of review of a summary judgment:
“‘“We review this case de novo, applying the oft-stated principles governing appellate review of a trial court’s grant or denial of a summary judgment motion:
“ ‘ “ We apply the same átandard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material facts exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’ ”
‘“American Liberty Ins. Co. v. Am-South Bank, 825 So.2d 786, 790 (Ala. 2002) (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000) (citations omitted)).’ ”
Jarrett v. Alabama Dep’t of Indus. Relations, 9 So.3d 501, 503 (Ala.Civ.App.2008).
Deidra first asserts that the trial court erred in entering a summary judgment on her breach-of-contract claims with regard to Cotton States’ failure to replace, or, in the alternative, to reimburse her for *147 replacing, the countertops, the floors, the cabinets, the' toilets, the porches, the clothes and boots, and the insulation and pegboard. “ ‘The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff’s performance under the contract; (3) the defendant’s nonperformance; and (4) resulting damages.’” Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009) (quoting Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala.2002)). The parties dispute whether Cotton States failed to perform under the otherwise valid contract between the parties, i.e., the insurance policy. In his deposition testimony, Anthony listed'the toilets, the insulation, the pegboard, the countertops, the cabinets, the porches, the tile, and the boots as items that had not been properly repaired or for which the Smiths had not received reimbursement. Cotton States argues that Deidra’s cause of action should have been brought against the individual contractors, rather than Cotton States, for their failure to perform the repairs to Dei-dra’s satisfaction. The insurance policy states that Cotton States will adjust any losses with Deidra. Cooper sent a letter to Deidra stating that Cotton States “does not guarantee the workmanship of any contractors or vendors.” Deidra’s contract with CRDN states that “CRDN has no connection with [Cotton States].” Deidra’s contract with PuroClean states that she understood that “PuroClean is working for me (us) and not the insurance company, adjuster and/or agent.” In light of those contracts and the language in the insurance policy, we agree that, with regard to the porches, because PuroClean had undertaken to repair them, Deidra should have sought reimbursement from PuroCle-an, not Cotton States. See Mitchell v. State Farm Fire & Cas. Co., 642 So.2d 462, 465 (Ala.1994). Similarly, because CRDN had undertaken to clean the clothes and they had not been cleaned satisfactorily, Deidra should have sought reimbursement from CRDN rather than Cotton States. Therefore, the trial court properly entered a summary judgment as to Deidra’s breach-of-contract claim relating to the porches and to the clothes that had not been properly cleaned by CRDN.
However, the deposition testimony indicated that Cooper, Cotton States’ agent, had refused to replace certain items listed by Anthony. There is no assertion that any independent contractor had undertaken to repair the insulation, the toilets, or the cabinets. Anthony testified that Cotton States had refused to pay for the replaced countertops and had failed to reimburse him for the insulation he had purchased. He also testified that, although the tiles other than in the kitchen had been cleaned, the cleaning had not worked, the tiles needed to be replaced, and Cooper had refused to replace them. With regard to Anthony’s boots, Anthony asserted that he had purchased a new pair of boots and that Cotton States had failed to reimburse the Smiths for them. Deidra testified that they had not received reimbursement for new clothes they had purchased. Cotton States failed to rebut that evidence in its motion for a summary judgment and supporting materials.
The insurance policy states that Cotton States will repair or replace damaged property “using standard new construction materials of like kind and quality.” There is nothing in the policy, however, that defines “of like kind and quality.” Insofar as Cotton States argues that the countertops had been replaced with granite rather than with Formica, the material of the counter-tops before the fire, Anthony testified that the two materials were similarly priced. Cotton States failed to offer any evidence indicating that the granite countertops are significantly different in kind and quality from the countertops replaced in the house. Therefore, a question of fact exists *148 as to whether the granite countertops and the Formica countertops are of like kind and quality for purposes of determining the obligation of Cotton States to pay for the replacement of the countertops pursuant to the insurance policy.
Cotton States also argues that Dei-dra’s insurance policy indicates that Cotton States would first pay any claim for an item on a cash-value basis but that it would pay the replacement-cost value of an item after the item was replaced. There is no indication in Cotton States’ summary-judgment motion, however, that Cotton States had given Deidra the cash value of the items discussed by Anthony or Deidra in their depositions. Thus, reviewing the evidence in the light most favorable to Deidra, as we are required to do, see, e.g., Malone v. Noblitt, 65 So.3d 404, 409 (Ala. Civ.App.2010), we conclude that Cotton States failed to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law on Deidra’s breach-of-contract claims as to these items. Therefore, with the exception of Deidra’s claim relating to the repair of the porches and the cleaning of their clothes, we reverse the trial court’s summary judgment in favor of Cotton States with regard to Deidra’s breach-of-contract claims.
Cotton States based its argument in its summary-judgment motion regarding Deidra’s bad-faith claim on its assertion that it was entitled to a judgment as a matter of law on her breach-of-contract claims. Cotton States argued that it had paid the Smiths for the damaged contents of their house, that the costs of repairing or replacing damaged items and parts of the house had been paid, and, thus, that there had been no refusal to pay Deidra’s claims. As discussed above, however, Cotton States failed to submit evidence in support of its summary-judgment motion indicating that it had paid for certain items discussed by Deidra and Anthony in their depositions. Moreover, to the extent Dei-dra and Anthony stated that Cooper had refused to replace certain items, Cotton States failed to submit any evidence in support of its summary-judgment motion indicating that Cooper had not made those refusals or that a legitimate reason existed for those refusals. See Watson v. Life Ins. Co. of Alabama, 74 So.3d 470, 475-76 (Ala. Civ.App.2011) (discussing elements of a claim of bad faith). Because Cotton States failed to make a prima facie showing that no genuine issue of material fact remained as to Deidra’s bad-faith claim, we also reverse the summary judgment as to that claim.
With regard to Deidra’s claim of misrepresentation, Cotton States argued in its summary-judgment motion that Deidra had failed to state that claim with particularity.
“Rule 9(b), Á[la]. R. Civ. P., provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala.1981).”
Lyde v. United Ins. Co. of America, 628 So.2d 665, 670 (Ala.Civ.App.1993). In her complaint, Deidra asserted that the “defendants misrepresented and committed fraud unto the plaintiffs by representing that upon a loss of their property and/or dwelling, they would be fully compensated for the loss up to the limits set forth in their policy”; that the “defendants accepted the premiums paid by the plaintiffs and *149 upon notice of a claim made by the plaintiffs, they refused to pay the amounts of coverage to which the plaintiffs were entitled”; and that “[a]gents of the said defendants also misrepresented that acceptance of benefit payments for the loss of their property would not release all claims under the dwelling policy.” Deidra failed to indicate the agents who allegedly made the misrepresentations or the time or place of the alleged misrepresentations. Thus, the trial court properly entered a summary judgment as to her misrepresentation claim. See Crum v. Johns Manville, Inc., 19 So.3d 208, 218-19 (Ala.Civ.App.2009).
Deidra fails to make any argument on appeal with regard to her conversion claim or her claim of unfair and deceptive trade practices; thus, we affirm the trial court’s summary judgment in favor of Cotton States on those claims as well.

Conclusion

We affirm the trial court’s summary judgment in favor of Cotton States with regard to Deidra’s claims alleging misrepresentation, conversion, and unfair and deceptive trade practices; we also affirm the summary judgment on Deidra’s breach-of-contract claim relating to the porches and the clothes. We reverse the trial court’s summary judgment in favor of Cotton States with regard to Deidra’s remaining claims of breach of contract and bad faith, and we remand the case to the trial court for further proceedings.
APPLICATION GRANTED; OPINION OF OCTOBER 25, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. The insurance policy covering the house was issued only to Deidra.

. That document-is titled "Judgment” in the record, but it is clearly a response by Deidra to Cotton States' motion for a summary judgment.