THOMAS, Judge.
Carl Allen appeals from a judgment entered on a jury verdict against Gerald Thomas Briggs in the amount of $30,000. Among other things, Allen argues on appeal that the jury’s damages award was inadequate.
On July 12, 2006, Allen was involved in a motor-vehicle accident with a vehicle driven by Briggs. Allen’s vehicle, a pickup truck, rolled down a 12-foot embankment, coming to rest on its top. The rescue team dispatched to the accident scene had to extricate Allen from the vehicle by using what is commonly referred to as “the jaws of life” and by cutting him from his seat-belt harness. Allen was then placed on a backboard with his neck in a brace and placed in a basket that was pulled up the embankment. An ambulance transported Allen to ECM Hospital, where he was admitted to the hospital for a two-day stay.
While at ECM Hospital, Allen was treated first in the emergency room by Dr. Carl Spangler and then by Dr. Gary Hester. Allen had suffered a fractured sternum, and he was evaluated by Dr. William Hea-ton, a cardiologist, to be sure that his heart had not been injured. When he was released from ECM Hospital, Allen was wearing a neck brace.
Two weeks after he was released from the hospital, Allen returned to Dr. Hester for a follow-up visit. Based on Allen’s complaints of neck pain and numbness and tingling in his arms, Dr. Hester referred Allen to Dr. Gerry Adderholt. Allen was not satisfied with Dr. Adderholt’s opinion, so he requested that he be referred to another physician. Dr. Hester then referred Allen to Dr. Franklin Sammons.
Dr. Sammons first saw Allen on August 23, 2006. Dr. Sammons’s deposition testimony indicates that his notes reflect that Allen complained of neck pain when he moved his head or neck and numbness and tingling in his left arm; Dr. Sammons’s notes also reflected that Allen reported not having suffered those symptoms before the accident. Dr. Sammons said that an MRI that Allen had had taken earlier revealed a possible disk herniation at C5-6; showed evidence of bone spurs at C3-4, C4-5, and C6-7; and indicated degenerative changes in Allen’s neck. Based on his examination and review of Allen’s MRI, Dr. Sammons diagnosed Allen with a central herniated disk at C5-6, multilevel disk disease with left cervical radicular syndrome, and possible carpal tunnel syndrome.
Dr. Sammons first attempted to use a cervical epidural block to treat Allen’s symptoms; however, Allen reported only slight relief from the epidural block. According to Dr. Sammons, Allen had positive Tinel’s and Phelen’s signs, indicating compression of his median nerve. Based on that information, Dr. Sammons scheduled Allen for nerve-conduction studies; those studies indicated that Allen suffered from mild upper-extremity carpal-tunnel-syndrome. Dr. Sammons then scheduled Allen for a carpal-tunnel-release surgery.
Allen underwent carpal-tunnel-release surgery on October 12, 2006. At his follow-up visits in December 2006 and January 2007, Allen reported that about half of his pain had resolved after the surgery. When his pain did not further improve, Allen returned to Dr. Sammons on May 14, 2007, still complaining of neck pain and numbness in his arm. Dr. Sammons then ordered that Allen undergo a myelogram, which revealed that Allen’s nerves were being compressed at the C4-5 level by *902 bone spurs and at the C5-6 level as a result of the herniated disk. Based on this information, Dr. Sammons recommended cervical-fusion surgery to Allen.
On July 29, 2007, Allen underwent cervical-fusion surgery. Dr. Sammons removed some of Allen’s bone spurs and the herniated disk, placed a bone plug at C5-6, and placed a metal brace over the area. The surgery was successful; Allen’s symptoms were resolved by the procedure. After being released by Dr. Sammons in December 2007 with instructions that he return if the symptoms returned, Allen had not returned to Dr. Sammons as of May 2009, when Dr. Sammons was deposed.
Because Allen had developed Alzheimer’s disease by the time of the July 31, 2009, trial, most of the trial testimony concerning Allen’s injuries and his reactions to the various treatments came from his wife, Marajuan Allen. Marajuan also related Allen’s employment history, which, she said, had not ever required repetitive use of the wrists or hands. Marajuan testified that Allen had never had any significant complaints of neck pain before the accident; she further denied that he had ever injured his neck before. She also denied that he had suffered numbness or tingling in his arms before the accident.
According to Marajuan, the epidural block did not resolve any of Allen’s symptoms, and even the carpal-tunnel-release surgery did not afford relief from the pain and- tingling, although it did, she said, afford- a modicum of relief from the numbness. The cervical-fusion surgery, however, explained Marajuan, resolved the pain, numbness, and tingling. She said that Allen had stiffness in his neck following the fusion, which, she said, he described as having a permanent crick in his neck. She noted that he also had more limited movement of his neck as a result of the surgery.
On direct examination, Marajuan admitted that Medicare had paid most of Allen’s bills, but she said that it had not paid “the hospital bill.” On cross-examination, Ma-rajuan testified that she and Allen had paid none of the $127,689.42 in medical bills “out of their pocket.” She then agreed that Medicare had paid the largest portion of those bills. Marajuan then said that “the Orthopedic Center [of which Dr. Sammons is a member physician] and Crestwood Hospital” had turned over bills that had gone unpaid to collection agencies. She did not testify regarding the amounts of those unpaid bills.
David Davis, the patient-accounts manager at ECM Hospital, testified that the hospital had charged Allen $13,211.20 for his two-day hospital stay in July 2006. In addition, a total of $800 in X-ray charges had been incurred by Allen in July and August 2006.. Those charges, said Davis, remained unpaid at the time of trial. Davis explained that the hospital had taken out a hospital lien to secure payment of those charges.
In May 2008, Allen sued Briggs; Ed Briggs Mechanical Contractors, Inc. (“EBMC”), Briggs’s employer; State Farm Mutual Automobile Insurance Company (“State Farm”), Allen’s insurer; and several fictitiously named parties, alleging that Briggs had negligently and wantonly operated his vehicle and had struck Allen’s vehicle, resulting in injury to Allen. State Farm filed a “Motion for Nonparticipation” in the case, and it agreed in that motion to be bound by the jury’s verdict as to damages; the trial court granted that motion. EBMC moved for a summary judgment, which was granted in its favor on July 31, 2009. The summary-judgment order concluded: “There being no just cause for delay of entry of judgment, this judgment is hereby made final.” After a trial on August 4, 2009, the trial court entered a judgment as a matter of law in favor of Allen and against Briggs on the issue of *903 liability. After its deliberations, the jury returned a verdict awarding Allen $30,000 in damages; the trial court subsequently entered a judgment on that verdict. After his motion for a new trial was denied, Alen appealed.[1]
Allen first attempts to challenge the summary judgment in favor of EBMC. However, the summary judgment in favor of EBMC was expressly made a final judgment pursuant to Rule 54(b), Ala. R. Civ. P., by the inclusion of some of the language contained in that rule in the summary-judgment order. See Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 87 (Ala.1985) (concluding that the statement “[t]he Court further finds there is no just reason for delay in the entry of said final judgment” was sufficient to make a judgment final pursuant to Rule 54(b)); see also Schneider Nat’l Carriers, Inc. v. Tinney, 776 So.2d 753, 755 (Ala.2000) (noting that “if it is clear and obvious from the language used by the trial court in its order that the court intended to enter a final order pursuant to Rule 54(b), then we will treat the order as a final judgment” even though the order may not contain all the language indicating that it is, in fact, an order directing the entry of a final judgment). Although Allen argues on appeal that a Rule 54(b) certification was not proper in this case, we have held that he is precluded from raising that issue now, because, insofar as his appeal is from the summary-judgment order, his appeal comes too late, having been filed more than 42 days after the entry of the summary-judgment order on July 31, 2009. See Lary v. Gardener, 908 So.2d 955, 957 n. 1 (Ala.Civ.App.2005) (citing Bagley v. Mazda Motor Corp., 864 So.2d 301, 316-17 (Ala.2003)); see also Ex parte King, 776 So.2d 31, 38 (Ala.2000) (Lyons, J., concurring specially) (indicating that, in Justice Lyons’s opinion, the remedy for a party who believes that a Rule 54(b) certification is defective is to “timely fil[e] a petition for a writ of mandamus directing the trial judge to set aside the Rule 54(b) certification, possibly as an alternative remedy sought at the same time as an appeal is taken from the order purportedly made final by the Rule 54(b) certification”).
Despite our holding in Lary, the dissent argues that a party should be permitted to raise a challenge to a Rule 54(b) certification on appeal from a subsequently entered judgment. 60 So.3d at 908. The dissent attempts to distinguish Lary on the basis that the plaintiff in Lary did not have a valid challenge to the Rule 54(b) certification. 60 So.3d at 908. However, in Lary we did not discuss the merits of the certification issue; instead, we clearly indicated that the challenge to the Rule 54(b) certification would not be considered because the plaintiffs “challenges are untimely because he did not file a notice of appeal with respect to [the Rule 54(b) certification of the summary] judgment within 42 days of its entry.” Lary, 908 So.2d at 957 n. 1.
However, the dissent’s approach is not without support. An appellate court may raise the impropriety of a Rule 54(b) certification ex mero motu when that judgment is presented in a timely appeal. Gregory v. Ferguson, 10 So.3d 596, 597 *904 (Ala.Civ.App.2008). The right of an appellate court to consider ex mero motu the propriety. of a Rule 54(b) certification stems from its power to determine its own jurisdiction, which jurisdiction flows, in part, from the timely appeal from a final, appealable judgment. See Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 361 (Ala.2004) (stating, in an opinion dismissing an appeal based on an improper use of a Rule 54(b) certification, that “all parties have overlooked a fundamental flaw in these appellate proceedings — the absence of an appealable judgment”); Gregory, 10 So.3d at 597 (“However, this court may consider [the] issue [of the appropriateness of the Rule 54(b) certification] ex mero motu because the issue whether a judgment or order is sufficiently final to support an appeal is jurisdictional.”). Thus, if a Rule 54(b) certification is determined to have been improperly entered, the judgment so certified is considered to be nonfinal and therefore unable to support an appeal. Dzwonkowski, 892 So.2d at 361. If that is the case, and an improperly certified judgment is not a final judgment because of an improper certification, why should an appellate court be precluded from considering, on appeal from the judgment resolving the remaining claim or claims, the propriety of the certification and, if the certification was improper, the propriety of the underlying interlocutory judgment?
Our research has revealed that only two federal appellate courts have considered this precise issue and that those two courts reached opposite conclusions.[2] See In re Lindsay, 59 F.3d 942, 951 (9th Cir.1995) (holding that “[a] Rule 54(b) certification, right or wrong, starts the time for appeal running”), and Page v. Preisser, 585 F.2d 336, 338 (8th Cir.1978) (holding that “when a district court erroneously certifies a claim as appropriate for immediate appeal under Rule 54(b), a party may raise that claim in a timely appeal from an adverse decision on the remaining claims in the lawsuit”). Although we comprehend the reasoning behind the rule announced in Page, which hinges on the idea that an erroneously certified judgment is, in fact, not a final judgment at all, Page, 585 F.2d at 338, we believe that the better course is to require that a party seeking to challenge the propriety of a Rule 54(b) certification do so in a timely appeal from the certified judgment. As explained in In re Lindsay, “[t]his avoids uncertainty for counsel about when to appeal.” In re Lindsay, 59 F.3d at 951.
Alabama law is well settled — “[a] judgment certified by a trial court pursuant to Rule 54(b) is a final appealable judgment^ and] the certification triggers the running of the 42-day appeal period.” Lewis v. State, 463 So.2d 154, 155 (Ala.1985).[3] To allow a later appeal of a judgment certified as final pursuant to Rule 54(b) in those circumstances in which a party desires to argue that the certification was improper injects uncertainty re *905 garding the time to appeal and the finality of judgments. If a judgment certified as final may be appealed at a later date, the prevailing party is left in limbo, uncertain whether the judgment in its favor is, in fact, final or whether it might, at the time the remaining claim or claims in the action are resolved, be rendered ineffective because the appellate court determines that the Rule 54(b) certification was improper. In addition, if a party waits to appeal the certified judgment because it believes that the certification was improperly granted, that party risks an appellate determination that the certification was, in fact, properly made, with the resulting foreclosure of the right to appeal regarding the certified judgment. See 15A Charles A. Wright et ah, Federal Practice & Procedure § 3914.7 (2d ed. 1992) (explaining that, typically, if a party fails to appeal from a judgment certified as final pursuant to Rule 54(b), Fed. R.Civ.P., the right to review is lost and stating that “a party who believes that a judgment was improperly entered would be better advised to take a protective appeal and urge that the appeal be dismissed”). We therefore reject the rule announced in Page and, consistent with Lary, embrace the holding in In re Lindsay. Thus, insofar as Allen’s appeal relates to the summary judgment entered in favor of EBMC, the appeal is dismissed.
Allen’s other argument on appeal is that the jury’s damages award of $30,000 is inadequate.
“At the outset we note that a jury verdict is presumed to be correct and should not be set aside on the grounds of inadequacy of damages unless the amount is so inadequate as to plainly indicate that the verdict was the result of passion, prejudice, or improper motive. Lartigue v. Fleming, 489 So.2d 583 (Ala.Civ.App.1986). Additionally, a strong presumption of correctness applies to a trial court’s refusal to grant a motion for a new trial, and we will not reverse absent a showing that the verdict was clearly wrong or unjust. La-rtigue, 489 So.2d 583.
“Further, the assessment of damages is a matter largely in the discretion of the jury. Hickox v. Vester Morgan, Inc., 439 So.2d 95 (Ala.1983). However, where liability is proven, the verdict must include an amount at least as high as the uncontradicted special damages, as well as an amount sufficient to make any compensation for pain and suffering. Orr v. Hammond, 460 So.2d 1322 (Ala.Civ.App.1984).”
Nemec v. Harris, 536 So.2d 93, 94 (Ala.Civ.App.1988).
Allen bases his argument that the jury’s damages award fails to compensate him for his substantial injuries on Smith v. Darring, 659 So.2d 678 (Ala.Civ.App.1995). In Smith, this court determined that a jury verdict assessing damages at $500 was inadequate in light of the failure of the defendant to offer evidence indicating that the plaintiffs medical bills, which totalled $2,310.33, had been paid by another source or reimbursed to her. Smith, 659 So.2d at 680. Relying on the abrogation of the collateral-source rule by Ala.Code 1975, § 12-21-45, the Smith court discussed whether the evidence at trial was sufficient for the jury to conclude that all but $500 of the plaintiffs medical expenses had been paid by a collateral source. Id. at 680.
The defendant’s counsel in Smith had asked the plaintiff whether her medical expenses had been paid by another party, to which she responded: “ T guess so — our insurance, medical insurance, we have co-pays that we pay on it.’ ” Id. The defendant’s counsel then had the plaintiff explain that she paid a $20 co-pay for each visit to the physician, thus reducing the amount of the charges for eight physician ■visits from $345 to $160. Id. However, *906 the defendant failed to introduce similar evidence regarding the plaintiffs other medical expenses. Id. Because “[t]he jury was not free to assess damages based on speculation or conjecture,” this court reversed the jury’s $500 damages assessment, noting that the damages awarded were inadequate based on the evidence presented. Id. at 681.
Allen argues that the present case is identical to Smith because Briggs failed to establish that another source paid a specific amount of Allen’s medical expenses. We disagree. As opposed to the equivocal “I guess so” answer from the plaintiff in Smith, Marajuan testified affirmatively on direct examination that Medicare had paid most of Allen’s medical bills but that it had not paid “the hospital bill.” See AMF Bowling Ctrs., Inc. v. Dearman, 683 So.2d 436, 438 (Ala.Civ.App.1995) (holding that the testimony of the plaintiff that 80% of her medical expenses were paid by insurance was sufficient evidence for the jury to exercise its judgment in determining the amount of damages and noting that § 12-21-45 does not require the defendant to produce evidence to prove the exact amount of medical expenses paid by a collateral source). Although Marajuan later testified on cross-examination that certain bills from the Orthopedic Center and Crestwood Hospital were also not paid by Medicare, she never established the particular amount of those outstanding charges. Davis’s testimony established that ECM Hospital had filed a hospital lien on outstanding charges in the amount of $14,011.20. Thus, the jury had before it evidence from Marajuan and Davis indicating that Medicare had paid most of the medical expenses incurred by Allen, that “the hospital bill” had not been paid, and that ECM Hospital bills having a combined total of $14,011.20 had not yet been paid. The jury was not permitted to engage in speculation about the amount of the charges that might be outstanding from the Orthopedic Center or Crestwood Hospital. See Smith, 659 So.2d at 681. Because the evidence at trial supports a conclusion that the jury’s verdict includes an amount sufficient to compensate Allen for his uncontroverted special damages— $14,011.20 — and an amount to compensate him for his pain and suffering, we cannot agree that the jury’s damages award is inadequate.
Because the damages awarded to Allen were not, on the basis of the evidence presented at trial, inadequate to compensate him for his uncontroverted special damages and his pain and suffering, we affirm the judgment entered on the jury’s verdict. We further dismiss this appeal insofar as it relates to the summary judgment in favor of EBMC for the reasons stated earlier in this opinion.
AFFIRMED IN PART; APPEAL DISMISSED IN PART.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in part and dissents in part, with writing.

. The existence of fictitiously named parties in Allen's complaint does not affect the finality of the judgment entered by the trial court. See Griffin v. Prime Healthcare Corp., 3 So.3d 892, 893 n. 1 (Ala.Civ.App.2008).
"When there are multiple defendants and the summons (or other document to be served) and the complaint have been served on one or more, but not all, of the defendants, the plaintiff may proceed to judgment as to the defendant or defendants on whom process has been served and, if the judgment as to the defendant or defendants who have been served is final in all other respects, it shall be a final judgment.”
Rule 4(f), Ala. R. Civ. P.

. We may consider cases construing a Federal Rule of Civil Procedure when construing a comparable rule in the Alabama Rules of Civil Procedure. Ex parte Scott, 414 So.2d 939, 941 (Ala.1982). Our supreme court has consulted cases construing Rule 54, Fed.R.Civ.P., when construing Rule 54, Ala. R. Civ. P. See, e.g., Burlington Northern R.R. v. Whitt, 611 So.2d 219 (Ala.1992), and Precision American Coip. v. Leasing Serv. Corp., 505 So.2d 380, 381 (Ala.1987).

. Of course, the time for appeal would be suspended by a timely filed postjudgment motion directed to the certified judgment, see Rule 4(a)(3), Ala. R.App. P. ("The filing of a post-judgment motion pursuant to Rules 50, 52, 55 or 59 of the Alabama Rules of Civil Procedure (ARCP) shall suspend the running of the time for filing a notice of appeal.”), and, therefore, in those circumstances, the time for appeal would expire upon the grant or denial of the postjudgment motion.