MOORE, Judge.
 

 Robert Watson appeals from a summary judgment entered by the Etowah Circuit Court (“the trial court”) on his claim of bad faith and on his request for damages for mental anguish against Life Insurance Company of Alabama (“LICOA”). We dismiss the appeal.
 

 Procedural History
 

 On June 4, 2009, Watson filed a complaint alleging claims of breach of contract and bad faith against LICOA. Specifically, he alleged, in pertinent part:
 

 “3. On or about December 28, 1997, [LICOA] issued a Cancer Ultimate Policy (policy no. H680040) with a Daily Hospital Room and Board Rider and Radiation & Chemotherapy Rider insuring [Watson].
 

 “5. According to the express terms of said policy, [LICOA] must pay the ‘actual charges’ for various treatments and services relating to cancer treatment of [Watson].
 

 “6. The term ‘actual charges’ is specifically defined in the policy as ‘the actual charges made by a person or entity furnishing the services, treatment or material.’
 

 “7. [Watson] was diagnosed with cancer in or around May 2008 and underwent treatment for cancer for several months following.
 

 “8. [Watson] submitted numerous claims to [LICOA] for service, treatment and material in accordance with the policy.
 

 “9. [LICOA] has failed or refused to pay [Watson’s] claims as required under said policy. In particular, [LICOA] has failed to pay the actual charges for services, treatments and materials prescribed by [Watson’s] physicians.”
 

 Watson asserted that the breach of contract had caused him to suffer mental anguish and emotional distress. He requested compensatory damages for the breach of contract and punitive damages for the bad faith failure to pay.
 

 On July 2, 2009, LICOA answered the complaint, and, on September 8, 2010, LI-COA filed a motion for a summary judgment on all claims asserted by Watson, along with evidentiary materials in support thereof. On November 5, 2010, Watson filed a brief and evidentiary materials in opposition to the summary-judgment motion. On November 12, 2010, the trial
 
 *472
 
 court entered an order granting LICOA’s motion for a summary judgment on Watson’s claim of bad faith failure to pay and on his request for damages for mental anguish and denying LICOA’s summary-judgment motion on Watson’s breach-of-contract claim. Although the summary-judgment order did not adjudicate all the claims between the parties, the trial court determined that there was no just reason for delay, and it directed the entry of a final judgment as to the claims disposed of by the partial summary judgment, pursuant to Rule 54(b), Ala. R. Civ. P. Watson filed his notice of appeal to the Alabama Supreme Court on December 17, 2010; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Standard of Review
 

 “
 
 ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).’
 

 “Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,
 
 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo.
 
 Alabama Republican Party v. McGinley,
 
 893 So.2d 337, 342 (Ala.2004).”
 

 Pritchett v. ICN Med. Alliance, Inc.,
 
 938 So.2d 933, 935 (Ala.2006).
 

 Facts
 

 The facts of this case are undisputed. In 1997, Watson and his wife, Lavonne Watson, purchased from LICOA the “Cancer Ultimate” policy, including a radiation and chemotherapy rider, and LICOA issued the Watsons policy number H680040 (“the policy”). Hoyt Casey, the vice president over claims and reinsurance for LICOA, testified by deposition. Casey testified that the policy is a supplemental policy, which means that the benefits are paid directly to the insured regardless of whether the covered individual has health insurance. Lavonne Watson testified by deposition that, at the time they purchased the policy, a LICOA agent discussed the policy with her and used a handout to describe the policy. That handout provided, in pertinent part:
 

 “RADIATION AND CHEMOTHERAPY — Pays 100% of actual charges, for Chemotherapy and Teleradiotherapy treatment to include X-Ray, Radium, and Cobalt for treatment of Cancer.”
 

 The “RADIATION AND CHEMOTHERAPY BENEFIT RIDER” to the policy provided, in pertinent part:
 

 “We will pay to a Covered Person actual charges not to exceed the amount stated in the Policy Schedule per calendar year, made for:
 

 “1. Teleradiotherapy, using either natural or artificially propagated radiation, when used for the purpose of modi-
 
 *473
 
 fieation or destruction of abnormal tissue and not for diagnostic purposes;
 

 “2. Interstitial or intracavitary application of radium or radioisotopes in sealed sources, application of radium or radioisotopic plaques or molds or the administration internally, interstitially or intracavitarially of radium or radioisotopes in non-sealed sources, all for the purpose of modification or destruction of abnormal tissue and not for diagnosis; and
 

 “8. Cancericidal chemical substances and their professional administration for the purpose of modification or destruction of abnormal tissue, to the extent these charts are not covered under (Attending Physician Benefits).”
 

 The policy defined the term “actual charges” as: “The actual charges made by a person or entity furnishing the services, treatment, or material.”
 
 [1]
 

 On September 22, 2004, LICOA sent Lavonne Watson a letter stating, in pertinent part:
 

 “Due to the increase on your unlimited radiation and chemotherapy cancer plan, many policy holders are changing to our newest limited plan, the Ultimate III. The plan that you now have is just like the Ultimate III except for the unlimited radiation and chemotherapy.
 
 The Ultimate III pays up to 25,000 per calender [sic] year for the radiation and chemotherapy.
 

 “If you have not been treated for Cancer in the last seven years, and can answer NO to the questions on the application we will allow you to change your old plan for this new plan the Ultimate III. If you decide to exchange your old plan for this new plan, please fill in all highlighted areas on the application and return in the enclosed envelope.”
 

 The brochure for the Ultimate III policy states, in pertinent part:
 

 “RADIATION AND CHEMOTHERAPY — You have the option to choose a benefit of □$25,000, n$20,000, D$15,-000, or □•$10,000 per calendar year. Pays 100% of usual and customary charges up to benefit selected for each covered person for Chemotherapy and Teleradiotherapy treatment to include X-Ray, Radium, and Cobalt for treatment of Cancer.”
 

 The brochure defined “usual and customary charges” as
 

 “the usual amount accepted as payment by a medical provider or entity furnishing the services, treatment, or material covered in the policy. Such charges shall not exceed the general level of charges made by others within the geographical area in which the services, treatment, or materials are rendered for an illness comparable in severity and nature. In no event will charges exceed the amount you are liable or legally responsible to pay. Usual and Customary Charges do not include any amounts that are written off, credited or discounted by the medical provider or entity.”
 
 [2]
 

 The Watsons declined to change policies.
 

 On May 12, 2008, Watson underwent a biopsy. On May 14, 2008, LICOA sent a letter to Lavonne Watson stating, in pertinent part:
 

 “The policy which you have provides certain benefits based upon actual charges made by medical providers.
 
 *474
 
 Medical billing practices can be very confusing as medical providers will issue bills which show a much larger amount than is actually accepted by the provider from Medicare or other medical insurers in full payment for that provider’s services. So as to avoid any possible confusion about the meaning of this provision, [LICOA] wants you to know that certain benefits determined under your policy are based upon the amounts actually accepted by the medical provider as payment in full for certain services.
 

 “As you know, the benefits under the cancer insurance policy are paid directly to you. [LICOA] bases certain benefits upon the amount accepted by medical providers as payment in full for certain services, but not on amounts which are charged off, written off or not expected to be paid to the provider.”
 

 On May 15, 2008, based on the May 12, 2008, biopsy, Watson was diagnosed with large B-cell lymphoma. He subsequently underwent treatment for lymphoma, including chemotherapy treatments, and submitted several claims to LICOA. LI-COA refused to pay the amount included on the bills from the medical providers, but, instead, paid Watson the amount that the medical providers had accepted as payment from Blue Cross and Blue Shield of Alabama, Watson’s health-insurance provider. Additionally, LICOA denied payment of Watson’s claims for benefits for certain “blood-builder” drugs that he was required to take subsequent to his chemotherapy treatments.
 
 [3]
 

 Casey testified that, at one point in time, the amounts stated on a medical provider’s bill and the amount that the provider actually charged and accepted as full payment were the same. He testified, however, that in 2001 LICOA discovered that the medical industry had changed its accounting practices so that a medical provider’s bill was actually greater than the amount that was actually charged and accepted as full payment. He testified that before it made that discovery in 2001, LICOA had required an insured to submit only the bill from the medical provider in support of a claim and that LICOA had paid the insured the amount billed. According to Casey, after 2001, LICOA began requiring additional documentation and would pay only the amount the medical provider accepted as full payment for its services. He testified that, before 2001, LICOA was overpaying benefits. Thus, the amount of benefits that LICOA paid decreased after 2001. He testified that, although the amount of benefits paid are tied to the amount of the premiums charged, the premiums on LICOA’s policies were not reduced in 2001. He testified that when the policies were developed, the premiums were based on what a person was actually being charged, not on an inflated amount that no one is expected to pay.
 

 Casey testified that the policy was not amended in 2001, and LICOA did not send notice of the additional documentation requirements to its insureds. Casey testified that there was some confusion on the part of certain claimants when the change took place. He testified that LICOA dealt with those claimants on a case-by-case basis. He testified, however, that most people understand that it is commonplace in the medical industry that the amount billed and the amount that the provider is actually paid or charged are different. Casey testified that LICOA’s position is
 
 *475
 
 that charge means costs. He testified that if the medical provider does not expect the amount billed to be paid, then the provider is not charging that amount. He testified that in his opinion the Watsons’ interpretation of the term “actual charges” is not reasonable.
 

 Casey testified that the first lawsuit against LICOA regarding the issue of the interpretation of the term “actual charges” was filed in 2004 in Alabama. He testified that that lawsuit was resolved out of court. He testified that he had given several depositions in cases on the issue of the interpretation of the term “actual charges.” Casey testified at his deposition that two other cases were currently pending against LICOA in Alabama concerning the issue and that no court had entered a judgment as a matter of law in favor of LICOA. He testified that most of the cases had been resolved out of court. Casey testified that the United States District Court for the Middle District of Alabama had determined that the term “actual charges” was not ambiguous in
 
 Claybrook v. Central United Life Ins. Co.,
 
 387 F.Supp.2d 1199 (M.D.Ala.2005). Casey also testified that the Alabama Department of Insurance had made an inquiry about LICOA’s interpretation of the term “actual charges” but that no action was taken.
 

 Discussion
 

 I.
 

 On appeal, Watson first argues that the trial court erred in entering a summary judgment in favor of LICOA on the bad-faith-failure-to-pay claim because, he says, he submitted substantial evidence indicating that LICOA’s failure to pay 100% of his claims under the policy for the. actual charges made by his health-care providers established both a “normal” and an “abnormal” case of bad faith.
 

 “This Court has defined ‘normal’ and ‘abnormal’ bad faith in the following manner:
 

 “ ‘In the “normal” bad-faith case, the plaintiff must show the absence of any reasonably legitimate or arguable reason for denial of a claim.
 
 [State Farm Fire & Cas. Co. v.] Slade,
 
 747 So.2d [293] at 306 [ (Ala.1999) ]. In the “abnormal” case, bad faith can consist of: 1) intentional or reckless failure to investigate a claim, 2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, 3) the manufacture of a debatable reason to deny a claim, or 4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim. 747 So.2d at 306-07....
 

 “ ‘ “ ‘Bad faith ... is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of a known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will.’ ”
 
 Slade,
 
 747 So.2d at 303-04 (quoting
 
 Gulf Atlantic Life Ins. Co. v. Barnes,
 
 405 So.2d 916, 924 (Ala.1981)).’
 

 “Singleton v. State Farm Fire & Cas. Co.,
 
 928 So.2d 280, 283 (Ala.2005). In order to recover on a ‘normal’ bad-faith claim, the plaintiff must prove: ‘(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for refusal and the insurer’s knowledge of that fact or the insurer’s intentional failure to determine whether there is any lawful basis for its refusal.’
 
 Acceptance Ins. Co. v. Brown,
 
 832 So.2d 1, 16 (Ala.2001). ‘For a “normal” bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law.’
 
 Shelter Mut. Ins. Co. v. Barton,
 
 822 So.2d 1149, 1155 (Ala.2001).
 
 *476
 
 However, ‘ “[t]he rule in ‘abnormal’ cases dispensed with the predicate of a preverdict JML [judgment as a matter of law] for the plaintiff on the contract claim if the insurer had recklessly or intentionally failed to properly investigate a claim or to subject the results of its investigation -to a cognitive evaluation.” ’
 
 White v. State Farm Fire & Cas. Co.,
 
 953 So.2d 340, 348 (Ala.2006) (quoting
 
 Employees’ Benefit Ass’n v. Grissett,
 
 732 So.2d 968, 976 (Ala.1998)).”
 

 Jones v. Alfa Mut. Ins. Co.,
 
 1 So.3d 23, 31-32 (Ala.2008).
 

 With regard to the “normal” claim of bad faith, Watson argues that LICOA had no “reasonably legitimate or arguable reason for denial of [his] claim.” Before we address the merits of Watson’s argument, however, we must first determine whether the trial court properly certified the judgment as final. “An appellate court may raise the impropriety of a Rule 54(b), Ala. R. Civ. P., certification
 
 ex mero motu.” Allen v. Briggs,
 
 60 So.3d 899, 903 (Ala.Civ.App.2010). “[A] Rule 54(b)[, Ala. R. Civ. P.,] certification should not be entered if the issues in the claim being certified and a claim that will remain pending in the trial court ‘“are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” ’ ”
 
 Schlarb v. Lee,
 
 955 So.2d 418, 419-20 (Ala.2006) (quoting
 
 Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp.,
 
 834 So.2d 88, 95 (Ala.2002), quoting in turn
 
 Branch v. SouthTrust Bank of Dothan, N.A.,
 
 514 So.2d 1373, 1374 (Ala.1987)). “‘Breach of an insurance contract is an element of a bad-faith-failure-to-pay claim.’”
 
 Ex parte Safeway Ins. Co. of Alabama, Inc.,
 
 990 So.2d 344, 351 (Ala.2008) (quoting
 
 Pontius v. State Farm Mut. Auto. Ins. Co.,
 
 915 So.2d 557, 564 (Ala.2005)). Therefore, in order for this court to determine whether the trial court properly entered a summary judgment on the “normal” claim of bad faith failure to pay, we would necessarily have to determine the merits of the breach-of-contract claim that is still pending before the trial court. Accordingly, we conclude that the “normal” bad-faith claim and the breach-of-contract claim “ ‘ “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” ’ ”
 
 Schlarb,
 
 955 So.2d at 419-20.
 

 Watson also argues that he established an “abnormal” bad-faith claim because, he says, LICOA is relying on an ambiguous term in the policy — “actual charges” — as a lawful basis for its refusal to pay his full claim.
 
 See White v. State Farm Fire & Cas. Co.,
 
 953 So.2d 340, 349 (Ala.2006) (“[I]n an ‘abnormal’ case [of bad faith], [an insurance company] cannot use ambiguity in the contract as a basis for claiming a legitimate or arguable reason for not paying the claim.”). We note, however, that, whether a contract is ambiguous is the threshold issue in a breach-of-contract claim.
 
 Avis Rent A Car Systems, Inc. v. Heilman,
 
 876 So.2d 1111, 1121 (Ala.2003). Thus, in order to determine whether the term “actual charges” is ambiguous, this court would have to determine the threshold issue in a claim that is still pending before the trial court. Accordingly, we also conclude that the “abnormal” bad-faith claim and the breach-of-contract claim “ ‘ “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” ’ ”
 
 Schlarb,
 
 955 So.2d at 419-20.
 

 Based on the foregoing, we conclude that the trial court erred to the extent that it certified its summary judgment on Watson’s claim of bad faith failure to pay as final.
 

 II.
 

 Watson also argues that the trial court erred in entering a summary judg
 
 *477
 
 ment on his request for mental-anguish damages on his breach-of-contract claim because, he says, under Alabama law, he may recover damages for the mental anguish he suffered as a consequence of LI-COA’s breach of the policy. As noted previously, although “[n]either party has raised the issue of the appropriateness of the trial court’s Rule 54(b)[, Ala. R. Civ. P.,] certification of its [November 12, 2010], summary-judgment order[,] .... this court may consider that issue
 
 ex mero motu
 
 because the issue whether a judgment or order is sufficiently final to support an appeal is jurisdictional.”
 
 Gregory v. Ferguson,
 
 10 So.3d 596, 597 (Ala.Civ.App.2008).
 

 “[CJertification of a decision addressing only the type of damages recoverable on a certain claim is inappropriate.
 
 Haynes v. Alfa Fin. Corp.,
 
 730 So.2d 178, 181 (Ala.1999). Although Rule 54(b)[, Ala. R. Civ. P.,] permits the ‘entry of a final judgment as to one or more but fewer than all of the claims or parties,’ it does not permit the trial court to make final an order that does not dispose of an entire claim.
 
 Haynes,
 
 730 So.2d at 181.”
 

 Hurst v. Cook,
 
 981 So.2d 1143, 1150 (Ala.Civ.App.2007). Because the trial court denied LICOA’s summary-judgment motion as to Watson’s breach-of-contract claim and granted the motion as to Watson’s request for damages for mental anguish based on LICOA’s breach of the contract, the summary judgment does not dispose of the entirety of Watson’s breach-of-contract claim. Accordingly, we conclude that the trial court also erred in certifying its summary judgment on Watson’s request for mental-anguish damages as final.
 
 Hurst,
 
 981 So.2d at 1158.
 

 Conclusion
 

 Based on the foregoing, we conclude that the trial court “exceeded its discretion in certifying the partial summary judgment as final. ‘A nonfinal judgment will not support an appeal.’ ”
 
 Schlarb,
 
 955 So.2d at 420 (quoting
 
 Dzwonkowski v. Sonitrol of Mobile, Inc.,
 
 892 So.2d 354, 363 (Ala.2004)). Consequently, we dismiss the appeal as being from a nonfinal judgment.
 
 Schlarb, supra.
 

 APPEAL DISMISSED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Casey testified that both types of cancer insurance policies offered by LICOA at that time provided that "actual charges” would be used to determine benefits.
 

 [2]
 

 . Casey admitted that LICOA replaced the term "actual charges” with "usual and customary charges” in its policies and that, presently, it offers only indemnity-based products.
 

 [3]
 

 . Watson testified that the “blood-builder drugs” were deemed a part of the chemotherapy treatment by the doctors and by Blue Cross and Blue Shield of Alabama. Casey, on the other hand, testified that certain services and drugs within chemotherapy treatments, including the blood-builder drags, are not covered under the policy.